IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



| | | |
|---|---|---|
| I.F., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 4:14-cv-359 |
| v. | § | |
| | § | JUDGE RON CLARK |
| LEWISVILLE INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | VSL |
| | § | |
| *Defendant.* | § | |

## <u>FINAL JURY INSTRUCTIONS</u>

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you, the jury, are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

1

You must answer all questions based on a preponderance of the evidence, unless I state otherwise. A **preponderance of the evidence** just means the amount of evidence that persuades you that a claim is more likely so than not so. If the proof fails to establish any essential part of Plaintiff Ellie Fletcher's claim by a preponderance of the evidence, you should find for Defendant Lewisville Independent School District ("LISD") as to that claim.

In deciding whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it because people may forget some things or remember other things inaccurately.

So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on that opinion. In deciding whether to accept or rely upon such an opinion, you may consider any bias of the witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is **direct evidence** – such as testimony of

an eyewitness.  Direct evidence includes a witness's testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. The other is **indirect or circumstantial evidence** – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. Circumstantial evidence can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

During the trial I sustained objections to certain questions.  You must disregard those questions entirely.  Do not speculate as to what the witness would have said if permitted to answer the questions.  Also, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case.  Except for the instruction to you on the law, you should disregard anything I may have said during the trial in arriving at your own findings as to the facts.

At the beginning of trial, I read certain stipulations to you. These stipulations are also attached as Exhibit A to these instructions.  A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or

"stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.

During the course of this trial I instructed you that I admitted Plaintiff's Exhibit 8, which is a copy of the powerpoint presentation that the Fletchers and their attorney presented to LISD. You may consider the comments next to the screen shots for the limited purpose of determining whether Ellie Fletcher made a good faith report of activity that violated Title IX.

I also instructed you that I admitted Plaintiff's Exhibit 49, which is an email chain between Rebecca MacDonald, Stephen Wadell, and Dr. Kevin Rogers about the sexual assault that is the subject of this case and about a sexual assault at another LISD campus. You may consider this exhibit for the limited purpose of determining when the district had knowledge of the difference between sexual assault and aggravated sexual assault. Such evidence may not be considered for any other purpose.

You are required to evaluate the testimony of a law-enforcement officer as you would the testimony of any other witness. No special weight may be given to his or her testimony because he or she is a law enforcement officer.

If you have taken notes they are to be used only as aids to your memory, and if your memory should be different from your notes, you should rely on your memory and not on your notes.  If you did not take notes, rely on your own independent memory of the testimony.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.

### THE ISSUES

Ellie Fletcher claims that LISD retaliated against her for reporting that LISD student football players sexually assaulted her and that LISD students sexually harassed her or engaged in gender-based harassment against her. A report made by the parent on behalf of a minor child is considered a report made by the child.

Ms. Fletcher's claim against LISD is asserted under Title IX of the Education Amendments Act of 1972, which prohibits sex discrimination, such as student-on-student sexual assault, student-on-student sexual harassment, or student-on-student gender-based harassment, in federally assisted education programs.

Title IX also prohibits retaliation for reporting activity that violates Title IX, such as student-on-student sexual assault, student-on-student sexual harassment, or student-on-student gender-based harassment.  Title IX, in effect, conditions an

offer of federal funding on a promise by the recipient not to retaliate against someone for making a good faith report of such activity.

Student-on-student **"sexual harassment"** and student-on-student **"gender-based harassment"** are more than simple acts of teasing or name calling; it is harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim of access to the educational benefits provided by the school.

To prevail on her retaliation claim, Ms. Fletcher must show each of the following elements by a preponderance of the evidence:

**First:** Ms. Fletcher engaged in activity protected by Title IX of the Education Amendments Act of 1972; namely that Ms. Fletcher made a good faith report about activity that violates Title IX;

**Second:** LISD knew of the protected activity;

**Third:** LISD took some action that was adverse to Ms. Fletcher either at the time or after Ms. Fletcher engaged in the protected activity; and

**Fourth:** LISD took the adverse action because Ms. Fletcher engaged in the protected activity.

Reporting student-on-student sexual assault, student-on-student sexual harassment, or student-on-student gender-based harassment is activity protected by Title IX. However, the report must be made in the good faith belief that the sexual assault, sexual harassment, or gender-based harassment occurred.

Specifically, Ms. Fletcher claims that she engaged in the following protected activity:

7

- That she reported verbal student-on-student sexual harassment or gender-based harassment on October 10, 2012;

- That she reported student-on-student sexual assault on October 15, 2012;

- That she re-urged the October 10, 2012 and October 15, 2012 reports from October 17, 2012 to June 2013; and

- That she reported the student-on-student cyberbullying in January 2013 and February 2013.

An **"adverse action"** is one that a reasonable student would have found materially adverse. The action is **"materially adverse"** if the action might well dissuade a reasonable student from making a report of activity that violates Title IX, or if the action can be said to unreasonably deprive the student of access to the educational benefits provided by the school.

Specifically, Ms. Fletcher contends that LISD committed the following adverse actions:

- Failing to take immediate reasonable action to separate Ms. Fletcher from the students accused of student-on-student sexual assault, student-on-student sexual harassment, or student-on-student gender-based harassment;

- Failing to promptly investigate Ms. Fletcher's reports of student-on-student sexual assault, student-on-student sexual harassment, or student-on-student gender-based harassment by her peers on campus;

- Discouraging Ms. Fletcher, or her parents acting on her behalf, from pursuing her claims;

- Encouraging Ms. Fletcher's parents to enroll her in another school or online program or the Homebound program;

- Constructively forcing Ms. Fletcher into seeking Homebound instruction to avoid penalties such as loss of academic credit, truancy, and attending school with harassers; and

- Excluding Ms. Fletcher from the school campus and activities while the school's investigation of her report was pending or ongoing.

LISD denies that it retaliated against Ms. Fletcher in any respect.  LISD asserts that it worked with Ms. Fletcher's family to have Ms. Fletcher quickly enrolled in the District's Homebound program so that she could continue her education without being subjected to an allegedly hostile environment while LISD attempted to discover what happened.

LISD is a legal entity and can only know about a report, and can only act or not act through its officers and employees, who are authorized to take action about such a report or to decide whether to take action on the report under the circumstances existing at the time.

LISD can be held liable for retaliation under Title IX only if an LISD official or employee who at a minimum has authority to address the alleged adverse actions and to institute corrective measures on LISD's behalf has actual knowledge of the adverse actions and fails adequately to respond.

If you find that LISD's attorney learned of one or more adverse actions taken by an LISD employee, then you may, but are not required to, presume that

LISD had knowledge of the same adverse actions.  The attorney must have learned about the adverse action during the existence of the attorney-client relationship and while acting in the scope of his or her authority as an attorney for LISD.

You need not find that the only reason for LISD's adverse action or actions was Ellie Fletcher's report of sexual harassment or sexual assault.  But to find LISD liable for an adverse action, you must find that LISD's decision for that adverse action against Ms. Fletcher would not have occurred in the absence of— but for—her protected activity.

You may not find LISD liable for an adverse action because you disagree with the action taken.  Nor may you find LISD liable because you disagree with the actions that LISD took or decisions that it made or because LISD did not discipline students in the way that you would have disciplined them.

You have heard evidence that LISD failed to comply with certain provisions of Title IX, of LISD's Code of Conduct, and of LISD's Extracurricular Code of Conduct.  While you may consider such failures, if any you find, as evidence of the intent or motive of those who failed to comply, you may not find LISD liable merely because of a failure to follow every provision of Title IX, the Code of Conduct, or the Extracurricular Code of Conduct.

You are not being asked whether sexual harassment occurred, whether the rape occurred, or whether cyber bullying occurred.  You are to decide whether

LISD took an adverse action against Ms. Fletcher because she made a good faith report about a sexual assault, sexual harassment, or gender-based harassment.

Ignorance of Title IX on the part of LISD employees charged with investigation of reports of sexual assault, sexual harassment, or gender-based harassment, or on the part of LISD employees charged with taking action to enforce Title IX, or on the part of an LISD official or employee who has authority to address the alleged adverse actions and to institute corrective measures on LISD's behalf, does not preclude a finding that LISD acted intentionally. LISD need not have intended to violate Title IX, but need only have intended to take one or more actions adverse to Ellie Fletcher because she reported a sexual assault, sexual harassment, or gender-based harassment.

If you disbelieve the reason LISD has given for one or more of its decisions or actions that affected Ms. Fletcher, then you may, but are not required to, infer that LISD would not have decided to make that decision or take that action but for Ms. Fletcher engaging in activity protected by Title IX.

## DAMAGES

Ms. Fletcher must prove her damages by a preponderance of the evidence. You should not conclude from the fact that I am instructing you on damages that I have any opinion on whether Ms. Fletcher has sustained any damages. I am instructing you on damages only so that you will have guidance in the event that

you decide that Ms. Fletcher suffered damages that were proximately caused by LISD's wrongful conduct, if any, you have found.

**"Proximate cause"** means that Ms. Fletcher must show that LISD's actions played a substantial part in bringing about or actually causing Ms. Fletcher's injury, and that the injury was either a direct result or a reasonably probable consequence of the condition.

The purpose of damages is to make Ms. Fletcher whole—that is, to compensate her for the damage she has suffered and restore her to the position she would have been in had the injury not occurred. The purpose is not to reward Ms. Fletcher. Damages are not limited to expenses that Ms. Fletcher may have incurred because of her injury, but may include damages for future medical expenses, mental anguish, and loss of capacity for enjoyment of life that Ms. Fletcher has suffered and incurred because of LISD's conduct.

The damages that you award must be fair compensation for all of Ms. Fletcher's damages, about which you are asked in the verdict form, no more and no less. You should not award damages for speculative injuries, but only for those injuries which Ms. Fletcher has actually suffered or that she is reasonably likely to suffer in the future.

If you decide to award damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but your award must be

based on evidence and not on speculation or guesswork.  On the other hand, Ms. Fletcher need not prove the amount of her damages with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

The following are the elements of damages that you will consider for Ms. Fletcher, and no other:

(1) Mental anguish sustained in the past;

(2) Mental anguish that, in reasonable probability, Ms. Fletcher will sustain in the future;

(3) Loss of capacity for enjoyment of life, sustained in the past;

(4) Loss of capacity for enjoyment of life that, in reasonable probability, Ms. Fletcher will sustain in the future; and

(5) Medical expenses that, in reasonable probability, Ms. Fletcher will sustain in the future.

**"Mental anguish"** means the conscious emotional pain, torment, and suffering experienced by Ms. Fletcher.  This term means something more than simply disappointment, anger, resentment, embarrassment, frustration, or hurt feelings.

13

In determining the amount of damages, consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.  That is, do not compensate twice for the same loss, if any.

Do not include interest on any amount of damages you find.

Do not include any amount for punitive or exemplary damages (i.e., damages meant to punish LISD).

Do not include any amount for any injury that was not proximately caused by the wrongful conduct of LISD that you have found.  Do not include any amount that Ms. Fletcher incurred for injuries caused by the alleged sexual assault or harassment/bullying by fellow students, if any, that were the basis of Ms. Fletcher's underlying reports, or by acts and/or omissions of independent third parties.

Do not include any amount for any condition existing before LISD's wrongful conduct that you have found, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the wrongful conduct of LISD, if any.

## INSTRUCTIONS FOR DELIBERATIONS

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case. Do not let bias, prejudice, or sympathy play any part in your deliberations. This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A school district is entitled to the same fair trial at your hands as a private individual and should be treated as such. The law is no respecter of persons; all persons, including school districts and other organizations, stand equal before the law, and are to be dealt with as equals in a court of justice.

When you retire to the jury room to deliberate on your verdict, you will take this charge with you, as well as exhibits that the court has admitted into evidence. When you go to the jury room, the first thing that you should do is select one of

your number as your Foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The Foreperson should read, or have another juror read, these instructions to the jury.  You should then begin your deliberations.

If you recess during your deliberations, follow all of the instructions that the court has given you on your conduct during the trial.  Do not discuss the case unless all jurors are present in the jury room.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a phone, smart phone, computer, laptop, or tablet, the Internet, any text or instant messaging service, or any blog or website to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is

important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and initial and date the verdict form. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the court security officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.

After you have reached a verdict, you are not required to talk with anyone about the case unless the court orders otherwise. You may now retire to the jury room to conduct your deliberations.

**SIGNED** March 21 , 2017.

Ron Clark
Chief Judge
United States District Court

17

# EXHIBIT A

## STIPULATED FACTS

1.  LISD received federal funding assistance for purposes of Title IX of the Educational Amendments Act of 1972 at all relevant times.

2.  Hebron High School 9th Grade Center ("HHS9") and Hebron High School are schools within LISD.

3.  According to the 2012-2013 LISD school calendar, the first day of school was August 27, 2012, and the last day was June 6, 2013.

4.  Ellie Fletcher was fourteen years of age in September 2012.

5.  Andrew Valderrama was fifteen years of age in September 2012.

6.  Isaiah Gary was fifteen years of age in September 2012.

7.  Ellie Fletcher formally withdrew from LISD in August 2013 and never re-enrolled.